# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Kenneth Hilton, Petitioner,

v.

The State, Respondent.

Appellate Case No. 2015-002140

---

## ON WRIT OF CERTIORARI

---

Appeal from Cherokee County
J. Derham Cole, Plea Court Judge
Roger L. Couch, Post-Conviction Relief Judge

---

Opinion No. 27772
Submitted February 15, 2018 – Filed February 28, 2018

---

## AFFIRMED

---

Appellate Defender Robert M. Pachak, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Valerie Garcia Giovanoli, both of Columbia, for Respondent.

---

**JUSTICE FEW**: Kenneth Lee Hilton appeals the denial of post-conviction relief (PCR) claiming the PCR court did not obtain a knowing and intelligent waiver of his right to counsel before allowing him to represent himself at his PCR trial. We find the PCR court obtained a valid waiver of counsel, and affirm.

## I.    Facts and Procedural History

Hilton lured a woman into his vehicle in Gastonia, North Carolina, on the pretense that he would drive her to a store so she could cash a check. When the victim realized Hilton was not driving to the store as he told her, she called 911 from her cell phone. Though she apparently did not speak to the 911 operator, she left the line open while Hilton drove her to a remote cemetery near Blacksburg, in Cherokee County, South Carolina. The 911 operator recorded the entire forty-five minute call. The recording contains the victim's statement, "Please pull over and let me out. I want to go home." Hilton responded, "If you don't calm down, I'm going to beat you so badly that the police won't recognize you." Hilton also told the victim he intended to sexually assault her. The victim stated Hilton repeatedly hit her in the face and throat as he drove. At the cemetery, Hilton forced the victim to remove her shorts and to perform oral sex on him. After he attempted to penetrate her with his penis, she was able to get away. Wearing only a shirt, the victim ran into the woods and hid until officers found her.

Hilton's DNA was matched through a national database. After he was arrested, he admitted he gave the victim a ride that day, though he initially denied he sexually assaulted her. He later pled guilty to kidnapping and assault with intent to commit criminal sexual conduct in the second degree. When asked at the PCR trial about the quality of the State's evidence, plea counsel explained, "We had the actual recording of what went on, and when you listen to it, there is no defense to these charges." The plea court sentenced him to forty-five years in prison. He did not appeal.

Hilton filed a PCR application alleging ineffective assistance of counsel. The State filed a return requesting a hearing, and the court appointed counsel to represent him. Hilton filed a written motion to "dismiss" his appointed attorney. A few weeks later, after learning his motion was set for a hearing, Hilton filed another motion, again seeking "dismissal of PCR Court Appointed Attorney." At the hearing on Hilton's motion, the PCR court informed him of his right to counsel but did not warn him of the dangers of proceeding without an attorney. After the hearing, the PCR court entered an order granting the motion to relieve counsel.

Almost a year later, Hilton appeared without an attorney before a second PCR court (Judge Couch) for his PCR trial. The PCR court began by inquiring into Hilton's waiver of his right to counsel. After the inquiry, discussed more fully below, the PCR court allowed Hilton to proceed without counsel. Both sides presented testimony. As a part of its presentation, the State informed the PCR court of Hilton's seven prior convictions for criminal sexual conduct. The PCR court took the case under advisement, and later issued a written order denying relief.

Hilton filed a petition for a writ of certiorari, arguing only that the PCR court erred in allowing him to represent himself without a valid wavier of his right to PCR counsel. We granted the petition.

## II. Analysis

In *Whitehead v. State*, 310 S.C. 532, 426 S.E.2d 315 (1992), we recognized that Rule 71.1(d) of the South Carolina Rules of Civil Procedure "mandates the appointment of counsel for indigent PCR applicants whenever a PCR hearing is held to determine questions of law or fact." 310 S.C. at 535, 426 S.E.2d at 316. Rule 71.1(d) provides:

> If, after the State has filed its return, the application presents questions of law or fact which will require a hearing, the court shall promptly appoint counsel to assist the applicant if he is indigent. . . . Counsel shall insure that all available grounds for relief are included in the application and shall amend the application if necessary.

Rule 71.1(d), SCRCP. *See also* S.C. Code Ann. § 17-27-60 (2014) ("If the applicant is unable to pay court costs and expenses of representation . . . these costs and expenses shall be made available to the applicant . . . .").

We went on to hold in *Whitehead* that "when a PCR application is not dismissed *before* a hearing is held, the PCR judge must appoint counsel or obtain a knowing and intelligent waiver of that right by the applicant." 310 S.C. at 535, 426 S.E.2d at 316. As to what constitutes a valid waiver, we stated "the PCR applicant must be made aware of the right to counsel and the dangers of self-representation." 310 S.C. at 535, 426 S.E.2d at 316-17 (citing *Prince v. State*, 301 S.C. 422, 423-24, 392 S.E.2d 462, 463 (1990)).

*Prince* involved the petitioner's claim he did not make a valid waiver of his right to counsel at his guilty plea, not at a PCR trial. 301 S.C. at 423, 392 S.E.2d at 463. As we indicated in *Whitehead*, however, the *Prince* structure also applies in a PCR proceeding. 310 S.C. at 535, 426 S.E.2d at 316-17. Thus, there are two requirements the PCR court must meet before allowing a PCR applicant to proceed without an attorney. First, the court should make sure the applicant is aware of his right to counsel; second, the court should ensure the applicant understands the dangers and disadvantages of self-representation. *See Richardson v. State*, 377 S.C. 103, 105-06, 659 S.E.2d 493, 494-95 (2008) (discussing the two requirements for a valid

waiver of counsel in a PCR proceeding); *Whitehead*, 310 S.C. at 535, 426 S.E.2d at 316-17 (same); *Prince*, 301 S.C. at 423-24, 392 S.E.2d at 463 (same in a criminal proceeding).

As to the first requirement—the PCR court must advise the applicant of his right to counsel—Hilton specifically mentioned Rule 71.1(d) in his motion to "dismiss" counsel. He wrote in the motion that Rule 71.1(d) "provides . . . appointment of counsel . . . if there is a material issue requiring a hearing." In addition, the first PCR court informed Hilton at the initial hearing he had the right to counsel, explaining that "under the law you have a right to have court-appointed counsel to assist you in a post-conviction relief action." Hilton responded that he understood. Finally, before allowing Hilton to proceed without an attorney at the PCR trial, the second PCR court again informed Hilton he had the right to counsel,

> Court: Mr. Hilton . . . it appears that you are representing yourself in this matter. Is that true?
>
> Hilton: Yes.
>
> . . . .
>
> Court: And are you aware or have you been made aware that, should you wish to have an attorney, an attorney could be appointed for you . . . ?
>
> Hilton: I do not need an attorney, sir. . . . I chose to be pro se.

The PCR court satisfied the first requirement.

As to the second requirement—the PCR court must ensure the applicant understands the dangers and disadvantages of self-representation—Hilton addressed in his filings with the PCR court some of the things with which counsel could assist him. For example, in his first motion he wrote he was aware he bore the burden of proving his PCR claims, stating "after all, it is I who has the burden of establishing my entitlement to the relief I seek." He also wrote he was aware of his right to amend his PCR application, a right specifically mentioned in Rule 71.1(d). In his second motion, he asked for time in which "to file his own pro se Amendment to his

Application." Hilton's filings also indicate he was aware an attorney could help him with discovery, but that he chose to conduct discovery himself. Hilton also stated, "I fully understand my claims, and . . . I have the ability to prepare and represent my own claims before the Honorable Court." Finally, Hilton attached an "affidavit" to both motions in which he swore, "I make this waiver, to dismiss my Court appointed Attorney, with the full understanding of the dangers of self-representation and the consequences of proceeding pro se."

The second PCR court had the following discussion with Hilton before proceeding with the PCR trial,

> Court: Mr. Hilton, -- I want to be sure that you're aware of the kinds of things that an attorney might do to be of service to you in this matter.
>
> Hilton: Right.
>
> Court: Are you aware of those things?
>
> Hilton: Yes, I am.
>
> Court: Do I need to go over those with you at this time?
>
> Hilton: No, sir.

This dialogue is by no means a perfect effort at ensuring Hilton understood the dangers and disadvantages of self-representation, primarily because Hilton chose not to discuss the particular ways in which an attorney could be helpful. However, the nature of a PCR proceeding is such that a court's explanation of the dangers and disadvantages of self-representation is necessarily abbreviated when compared to such an explanation in a criminal case. In this PCR case, Hilton specifically stated in his affidavit he had a "full understanding of the dangers of self-representation and the consequences of proceeding pro se." At the PCR trial, the court offered to explain "the kinds of things that an attorney might do to be of service to you," and Hilton declined. While that unaccepted offer might not be sufficient in other circumstances, the record here is clear Hilton was already aware of several of the specific advantages of having an attorney. These include Hilton's knowledge that an attorney could assist him in conducting discovery, amending his application, and meeting his burden of proof.

If Hilton had been willing to allow the court to explain, the court would certainly have specifically discussed other advantages of having an attorney that can become important in PCR trials, such as an attorney's understanding of substantive law, and her skill at questioning witnesses to assist the applicant in meeting his burden of proof. Nevertheless, this record indicates—though does not clearly reveal—Hilton was aware of these advantages.[1] In addition, Hilton has not argued on appeal any one point as to which he contends the court's explanation was inadequate.

At the initial hearing, the PCR court clearly erred by failing to ensure Hilton understood the dangers and disadvantages of self-representation before granting the motion to relieve his appointed attorney. *Whitehead*, 310 S.C. at 535, 426 S.E.2d at 316-17; *see also Richardson*, 377 S.C. at 105-06, 659 S.E.2d at 494-95 (repeating our holding in *Whitehead* that "if a PCR application presents questions of law or fact requiring a hearing, . . . state law provides that counsel must be appointed or a knowing, intelligent waiver of the right to counsel must be obtained"). The precise question before us, however, is whether the second PCR court (Judge Couch) erred by going forward with the PCR trial with Hilton representing himself. After considering the entire record, we find Hilton's statements in his motions, combined with Judge Couch's rejected offer to explain the things an attorney could do to assist him, meet the second requirement of *Whitehead*—that the court should ensure the applicant understands the dangers and disadvantages of self-representation. *See Wroten v. State*, 301 S.C. 293, 294, 391 S.E.2d 575, 576 (1990) (holding, even in the context of a criminal case, "If the record demonstrates the defendant's decision to represent himself was made with an understanding of the risks of self-representation, the requirements of a voluntary waiver will be satisfied.").

### III. Conclusion

---

[1] As to an attorney's ability to help him understand substantive law, Hilton wrote in his first motion, "I further hereby state that I fully understand my claims and issues that I intend to raise. Believe me I have been studying every day since trial. I have the ability to prepare and represent my own claims before the Honorable Court." As to an attorney's ability to question witnesses, the second PCR court offered at the beginning of the PCR trial to discuss reappointing counsel if Hilton changed his mind, and the court discussed a non-lawyer's difficulty questioning witnesses as Hilton began his cross-examination of plea counsel.

The PCR court obtained a valid waiver from Hilton of his right to counsel before allowing him to represent himself in a PCR trial.  Therefore, the PCR court's decision to deny relief is **AFFIRMED**.

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.**