# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Derrick Fishburne, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-002385

---

## ON WRIT OF CERTIORARI

---

Appeal from Colleton County
Edgar W. Dickson, Circuit Court Judge

---

Opinion No. 27911
Submitted June 17, 2019 – Filed July 31, 2019

---

## REMANDED

---

Tristan Michael Shaffer, of Tristan M. Shaffer Attorney at
Law, of Chapin, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Benjamin Hunter Limbaugh, both of
Columbia, for Respondent.

---

**JUSTICE JAMES:** This case stems from the post-conviction relief (PCR) court's denial of relief to Derrick Fishburne. Because the PCR court's order contains no findings of fact as to one of Fishburne's primary PCR claims, we remand this matter to the PCR court for the PCR court to issue an order setting forth adequate findings of fact and conclusions of law regarding Fishburne's unaddressed PCR claim. In

doing so, we again stress that PCR orders must be prepared in compliance with section 17-27-80 of the South Carolina Code (2014) and Rule 52(a) of the South Carolina Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

During the early morning hours of April 10, 2009, law enforcement responded to a 911 call reporting a shooting at Spirits Lounge in Walterboro. A patrol officer arrived on scene and observed a man (Victim) lying in a pool of blood on the pavement outside the front of the club. Victim was transported to the hospital, but he did not survive. An autopsy determined Victim's cause of death was six gunshot wounds.

During law enforcement's investigation, two eyewitnesses identified Fishburne as the shooter. These eyewitnesses first identified Fishburne by name and subsequently identified him in a lineup. Law enforcement arrested Fishburne when he appeared at the local courthouse for roll call in an unrelated matter. Fishburne gave law enforcement a statement in which he denied being at the club on the night of the murder, claiming to have stayed the night at his girlfriend's house. This was not the truth. Fishburne's girlfriend told law enforcement he left her house around 12:45 a.m. (before the shooting occurred) and did not return until approximately 3:00 a.m. (after the shooting occurred). Another witness, Jarrod Frazier, testified he saw Fishburne at the club and thought Fishburne might have left before the shooting, but was not sure. In his written statement to law enforcement, Frazier stated he saw Fishburne leaving the club's parking lot in an SUV about 10-15 minutes before the shooting occurred. Frazier admitted on cross-examination he gave the exculpatory written statement to law enforcement so Fishburne "could get a bond."

Fishburne was indicted for murder and possession of a weapon during the commission of a violent crime. At trial, Fishburne's trial counsel said the following during his opening statement to the jury—all relevant to one of Fishburne's underlying PCR claims:

> I think the evidence will show that [law enforcement] made a decision that before the morning was out, once they had the name Derrick Fishburne, once they had that name, they had their guy. I think the evidence will show they picked him up from roll call on Friday, the next day. He was already in court. He might qualify as a usual suspect. He was an easy guy for them to get, because he was in court anyway. They picked him up from roll call on April the 10th, and they took him back to the Sheriff's Office Annex and they interviewed him. Now,

because he had involvement with them before, I think the evidence will show he said, "I wasn't there." I think the evidence will show that there's a long video tape and you will have a chance to look at that.

He said, "I'm not saying anything," pretty much. "I wasn't there. I don't know what you're talking about." And at the end of the interview, they arrested him. One of the things he told me was, "I was at my girlfriend's house all night. I was at Lorinda Williams' -- Penny Williams' house," and I think the evidence will show that they went and checked with Penny, that he was not there. That he had, in fact, left the house at some time during a time when he could have been at the club, and I think the evidence will show from different witnesses, I think the State will be able to prove that he was, in fact, at the club. But they arrested him before they checked that out. I think the evidence will show that he was arrested at the end of that interview and they didn't check out Penny's story until later. It didn't check out. He told a lie.

Further, during closing arguments, Fishburne's trial counsel argued:

[Fishburne] was rounded up and the testimony of Detective Williams was that they picked him up from roll call. He is one of the usual suspects. He had been at roll call, so he already had some trouble. They knew him. They took him from here and took him down to the station and Detective Williams told you, he was already under arrest at that time. He was under arrest for murder and it really didn't matter what he said.

One of the things also, what Detective Johnson said in the tape that you got to see is that [Fishburne's] brother is in prison. This is not a pretty fact, but it's the truth of the matter. The Fishburnes had trouble; it's a fact. So what does that mean to [Fishburne]? What does that mean to anybody being rounded up and taken down to the Sheriff's Office to get a statement? Do you think you're going to get a fair trial? He was already under arrest and it -- yeah, they checked out his story and it didn't check out, but if he was already under arrest, it didn't matter.

The jury convicted Fishburne as indicted. The trial court sentenced Fishburne to concurrent prison terms of forty years for murder and five years for possession of a weapon during the commission of a violent crime. The court of appeals dismissed

Fishburne's direct appeal following *Anders*[1] briefing. *State v. Fishburne*, Op. No. 2012-UP-363 (S.C. Ct. App. filed June 20, 2012).

Fishburne filed an application for PCR, and his hearing was held on October 27, 2014. Prior to the commencement of the hearing, Fishburne specified his alleged grounds for relief: (1) ineffective assistance of counsel for trial counsel's failure to properly investigate potential alibi witnesses and (2) ineffective assistance of counsel for trial counsel introducing other bad act evidence into the trial and characterizing him as one of the "usual suspects." The State objected to the amendment because Fishburne did not "enumerate these allegations with specificity in his application." After Fishburne explained he had alerted the State to these specific allegations over a year ago via email, the PCR court permitted the amendment.

Trial counsel testified Fishburne's statement to law enforcement that he was not at the club was problematic because the State had several witnesses who would testify Fishburne was indeed at the club. Trial counsel testified Fishburne explained law enforcement had harassed him in the past and that he did not think law enforcement would believe his side of the story anyway. Trial counsel explained his decision to refer to Fishburne as a "usual suspect" as follows:

> **Trial Counsel:** Well, I had to -- I tried to find a way to explain why he lied to the police. You know, you've got somebody that has you leaving the scene before this happens, so why would you deny that you're there? And you know, you don't need to do that; and it's a lie, and it's an unnecessary lie. And so, how do you explain that? You've got to give the jury -- in my -- my strategy, you've got to give the -- you can't -- juries don't like lies, whether the police tell them or the defendants tell them or whether witnesses tell them, and you've got to explain it, somehow. And that was my way to explain why he would lie about being in the club.
>
> **PCR Counsel:** Okay. It's safe to say that that's sort of a double-edged sword. Is that --
>
> **Trial Counsel:** Yes, it's a risk.
>
> **PCR Counsel:** Okay.

---

[1] *See Anders v. California*, 386 U.S. 738 (1967).

**Trial Counsel:**  There's no doubt.  I mean, you -- you want to present some evidence that, you know, somebody doesn't trust the police, then you have to show prior involvement with the police, which, normally, you work to try not to do.  But, yeah, it's a risk.  But I don't know how -- but you've got to explain a lie.

Trial counsel admitted he did not pursue additional alibi witnesses that could have testified to Fishburne leaving the club before the shooting.  Trial counsel testified he strategically decided to not present additional alibi witnesses to say Fishburne left the club over an hour before the shooting because he already had a witness he believed would testify that Fishburne left shortly before the shooting.

Other than trial counsel, Fishburne was the only witness at the PCR hearing. He testified he was at the club that evening but left prior to the shooting.  He testified he gave trial counsel the names of multiple alibi witnesses and that trial counsel failed to contact them.  None of these purported alibi witnesses were present at the PCR hearing.

The PCR court denied Fishburne relief in a written order.  After setting forth the procedural history of Fishburne's case and reciting the *Strickland*[2] standard, the PCR court set forth findings of fact and conclusions of law on Fishburne's claim trial counsel failed to call alibi witnesses.  However, there is no discussion at all of Fishburne's claim arising from trial counsel's mention of Fishburne being at roll call for another criminal charge and trial counsel's characterization of Fishburne as a "usual suspect."  Fishburne did not file a Rule 59(e), SCRCP motion asking the PCR court to rule on this issue.  We granted Fishburne's petition for a writ of certiorari to address whether his case should be remanded to the PCR court to make sufficient findings of fact as mandated by statute.

## DISCUSSION

In ruling on a PCR application, "[t]he [PCR] court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented." S.C. Code Ann. § 17-27-80 (2014).  The South Carolina Rules of Civil Procedure apply to PCR matters.  *See id.*; Rule 71.1(a), SCRCP.  Rule 52(a) provides in

---

[2] *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984) (providing a PCR applicant claiming ineffective assistance of counsel must show (1) counsel's performance was deficient and (2) counsel's deficiency prejudiced the applicant to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

pertinent part, "In all actions tried upon the facts without a jury . . . , the court shall find the facts specially and state separately its conclusions of law thereon." Rule 52(a), SCRCP. "The PCR court's general denial of all claims not specifically addressed in the PCR court's order 'does not constitute a sufficient ruling on any issues since it does not set forth specific findings of fact and conclusions of law.'" *Simmons v. State*, 416 S.C. 584, 592, 788 S.E.2d 220, 225 (2016) (quoting *Marlar v. State*, 375 S.C. 407, 409, 653 S.E.2d 266, 266 (2007)).

We agree with Fishburne that the PCR court erred by not making any findings of fact or conclusions of law regarding his ineffective assistance of counsel claim for trial counsel's reference to him being at roll call to answer to another criminal charge and his characterization of Fishburne as a "usual suspect." Over the years, we have issued numerous opinions addressing a PCR court's failure to make adequate findings of fact and conclusions of law regarding duly raised issues. In *McCray v. State*, the PCR court dismissed the applicant's claims of ineffective assistance of counsel without making any findings of fact on the specific allegations raised. 305 S.C. 329, 330, 408 S.E.2d 241, 241 (1991). We reversed and remanded, holding: "The PCR court's conclusions regarding ineffective assistance are insufficient for appellate review and fail to meet the standard set forth in [section 17-27-80]." *Id.*

In *Pruitt v. State*, the applicant raised several claims for relief in his PCR application and presented evidence regarding those claims during the PCR hearing. 310 S.C. 254, 255, 423 S.E.2d 127, 127-28 (1992). The PCR court's order did not address the applicant's claims. We vacated the PCR court's order denying relief and remanded the matter to the PCR court to hold a new hearing. We noted, "[W]e are not abandoning the general rule that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review. The extraordinary action we take today is necessary only because our opinion in *McCray* is not being followed." *Id.* at 255 n.2, 423 S.E.2d at 128 n.2. We further explained:

> We take this opportunity to express our concern with the increasing number of orders in PCR proceedings that fail to address the merits of the issues raised by the applicant. Not only does this deprive the parties of rulings on the issues raised, but it makes review by the appellate court more difficult and ultimately increases the work load of all involved where, as in this case, a new hearing is required to secure the rulings which should have been made initially. Counsel preparing proposed orders should be meticulous in doing so, opposing counsel should call any omissions to the attention of the PCR judge prior to issuance of the order, and the PCR judge should carefully review the

> order prior to signing it. Even after an order is filed, counsel has an obligation to review the order and file a Rule 59(e), SCRCP, motion to alter or amend if the order fails to set forth the findings and the reasons for those findings as required by § 17-27-80 and Rule 52(a), SCRCP.

*Id.* at 255-56, 423 S.E.2d at 128; *see also McCullough v. State*, 320 S.C. 270, 272, 464 S.E.2d 340, 341 (1995) ("Although the error was not raised to and ruled on by the PCR judge, we find it necessary to vacate the order and remand this matter to the circuit court to issue an order addressing its decision to dismiss [the applicant's] second application as successive."); *Bryson v. State*, 328 S.C. 236, 236-37, 493 S.E.2d 500, 500 (1997) (vacating the order of dismissal and remanding to the PCR court to make specific findings of fact and conclusions of law for each issue properly raised by the applicant).

In *Humbert v. State*, the applicant argued he received ineffective assistance of counsel when trial counsel allowed him to appear at trial while wearing a jail uniform, shackles, and an identification bracelet bearing his mug shot. 345 S.C. 332, 334, 548 S.E.2d 862, 863 (2001). The PCR court did not rule specifically as to whether trial counsel was ineffective for proceeding to trial while the applicant was wearing shackles and the identification bracelet. *Id.* at 337, 548 S.E.2d at 865. Because the applicant did not file a Rule 59(e) motion requesting a ruling on these issues, we held the issues were not preserved for review. *Id.*

In *Marlar v. State*, the applicant raised several issues to the PCR court, and the PCR court's order failed to specifically address any of the issues raised by the applicant. 375 S.C. 407, 408, 653 S.E.2d 266, 266 (2007). The applicant did not file a Rule 59(e) motion but petitioned for a writ of certiorari, arguing the PCR court's order was inadequate and that his case should be remanded for specific findings of fact. The court of appeals vacated the PCR court's order and remanded the matter for a new hearing, stressing the need for the PCR court to make specific findings of fact and conclusions of law as to each issue raised in the PCR application. In doing so, the court of appeals rejected the State's argument that none of the applicant's allegations were preserved because of the applicant's failure to make a Rule 59(e) motion to alter or amend the judgment to include specific findings of fact and conclusions of law. The court of appeals reasoned that this Court, in the past, had remanded PCR actions to the PCR court for specific rulings, despite the fact there were no Rule 59(e) motions filed.

We reversed the court of appeals' decision, explaining:

The cases this Court remanded for specific findings were unique cases in which the Court attempted to remind circuit court judges and parties that: (1) specific findings of fact and conclusions of law were required; and (2) a Rule 59(e) motion must be filed if issues are not adequately addressed in order to preserve the issues for appellate review. Although the cases apparently have not accomplished the Court's goal, they do not change the general rule that issues which are not properly preserved will not be addressed on appeal.

*Id.* at 410, 653 S.E.2d at 267. We held that because the applicant failed to make a Rule 59(e) motion asking the PCR court to make specific findings of fact and conclusions of law on his allegations, the issues were unpreserved, and the court of appeals erred by addressing the merits of the issues and remanding the case to the PCR court. *Id.*

In *Simmons v. State*, the PCR court vacated the applicant's death sentence but summarily denied all of his remaining claims, including a challenge to DNA evidence, finding the claims to be "without merit." 416 S.C. 584, 591, 788 S.E.2d 220, 224 (2016). Although the applicant failed to file a Rule 59(e) motion to request a ruling on the summarily denied issues, we noted "that although the State is technically correct [(in arguing the applicant's claims were not preserved)], we also believe dismissing the writ of certiorari would be fundamentally contrary to the interests of justice. . . . [O]ur jurisprudence permits a remand under such extraordinary circumstances." *Id.* We emphasized remands should be granted "sparingly" and should be "reserved for the rarest of cases." *Id.* at 593, 788 S.E.2d at 225. We remanded the matter to the PCR court for a new hearing on the DNA claim. *Id.* at 593-94, 788 S.E.2d at 225.

Last year, we issued an order holding the PCR court erred by signing an inadequate PCR order and by denying the applicant's Rule 59(e) motion. *See Reese v. State*, 425 S.C. 108, 111, 820 S.E.2d 376, 378 (2018). Citing numerous cases, we noted, "This is not the first time this Court has raised concerns over orders . . . that do not comply with section 17-27-80 and Rule 52(a)." *Id.* at 109-11, 820 S.E.2d at 377-78. We vacated both PCR orders and remanded the case to the PCR court for the entry of "a new PCR order that complies with the law." *Id.* at 111, 820 S.E.2d at 378.

The State argues Fishburne's failure to file a Rule 59(e) motion precludes appellate review. *See Marlar*, 375 S.C. at 410, 653 S.E.2d at 267 (providing "a Rule 59(e) motion must be filed if issues are not adequately addressed" in the PCR order). We acknowledge the validity of the State's preservation argument, and we

acknowledge our prior decisions have been somewhat inconsistent as to whether a Rule 59(e) motion is required to preserve an applicant's request to remand to the PCR court for the consideration of particular issues in which the PCR court failed to make sufficient findings of fact and conclusions of law. If this were a generic civil action, we would likely be quick to accept the State's preservation argument. However, because the United States Constitution's Sixth Amendment guarantee to a defendant's right to effective assistance of counsel is engrained in PCR cases, we cannot continue to permit a party's procedural shortcoming—such as the failure to file a Rule 59(e) motion—to prevent this Court from remanding claims of ineffective assistance of counsel when the PCR court's order does not comply with section 17-27-80.

We do not place the blame on a single party below for an insufficient PCR order. The preparation and finalization of a PCR order is often a collaborative effort. We recognize the prevailing party often prepares a proposed order for the PCR court. *See Hall v. Catoe*, 360 S.C. 353, 365, 601 S.E.2d 335, 341 (2004) ("[I]t is common practice for judges to ask a party to draft a proposed order for the sake of efficiency."). When counsel for either side prepares the proposed order, the order must include findings of fact and conclusions of law as to all issues raised by an applicant. A copy of the proposed order should be transmitted to opposing counsel. Opposing counsel should promptly review the proposed order and alert preparing counsel and the PCR court as to any deficiencies in the proposed order. Because the PCR judge will ultimately be signing the order, the PCR judge must carefully review the proposed order to ensure it includes appropriate findings of fact and conclusions of law as to all issues raised. Once a proposed order is finalized, signed by the PCR judge, filed, and served upon the parties, the parties should thoroughly review the final order to make sure all issues raised were adequately addressed as required by section 17-27-80 and Rule 52(a); if they were not, a timely Rule 59(e) motion should be filed, requesting the PCR court to address the appropriate issues. When these steps are ignored on the front end, we find ourselves having to remand a case, as we do today.

In remanding to the PCR court, we do not dictate the conclusions the PCR court should reach. We simply require the PCR court to set forth appropriate findings of fact and conclusions of law, whatever they may be. As we stated almost thirty years ago in *Pruitt*, "We are confident that in the future all those involved in post-conviction matters will do everything in their power to ensure that remands such as the one we order today will no longer be necessary." 310 S.C. at 256, 423 S.E.2d at 128.

**CONCLUSION**

We remand to the PCR court for the issuance of a supplemental order setting forth findings of fact and conclusions of law on the PCR ground that was not addressed in the original order.  The supplemental PCR order shall be entered within forty-five days of this Court's mailing of the remittitur.  Following the issuance of the supplemental PCR order (and a ruling on any post-hearing motions that may thereafter be filed), the aggrieved party may serve and file a new notice of appeal.

**REMANDED.**


**BEATTY, C.J., KITTREDGE and FEW, JJ., concur.  HEARN, J., concurring in a separate opinion in which JAMES, J., concurs.**

**JUSTICE HEARN:** I concur but write separately to emphasize the importance of filing a Rule 59(e) motion to preserve an issue for appellate review. I caution the bench and the bar not to read our decision as relaxing this requirement in the PCR context. Our rules do not expressly carve out any such exception, and therefore, appellate courts should avoid selectively applying them in PCR. Although we have overlooked the lack of a Rule 59(e) motion in the past, as the majority discusses, those decisions clearly represent extraordinary circumstances. Our issue preservation requirements are well-settled and serve to enable both parties to raise issues and allow courts an opportunity to rule on them. *Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011). Fairness dictates that we apply these rules in a consistent manner, departing from this approach only in exceptional circumstances—lest the exception swallow the general rule. While the wisdom of foregoing the need to file a Rule 59(e) motion to preserve an issue in PCR is not before us, if there is a sentiment to abandon this procedural requirement, then the appropriate course is to submit a proposed rule change to the General Assembly for its approval.

I agree that PCR implicates the Sixth Amendment, as it is the avenue for challenging such alleged constitutional violations that occurred at trial. However, I do not believe this fact alone requires us to address an issue that is clearly unpreserved. PCR is a creature of statute and governed by the Uniform Post-Conviction Procedure Act. *See Robertson v. State*, 418 S.C. 505, 513, 795 S.E.2d 29, 33 (2016) ("The South Carolina Legislature enacted the Uniform Post-Conviction Procedure Act to govern all aspects of PCR . . . ."). It is this statutory scheme that affords the right to counsel in PCR, not the constitution. *See Turner v. State*, 384 S.C. 451, 456 n.5, 682 S.E.2d 792, 794 n.5 (2009) ("[T]he right to PCR counsel arises from Rule 71.1, SCRCP, and not from the constitution."). While we certainly apply Sixth Amendment principles in PCR,[3] because the statute affords this right, I do not believe it is inherently unfair to follow our issue preservation rules uniformly. Accordingly, in most instances where a party fails to file a Rule 59(e) motion when required to do so, we will find the issue unpreserved and decline to address the merits. Nonetheless, I join the majority because it is necessary once again to remind the State, opposing counsel, and the circuit court of the need for orders that contain specific findings of fact and conclusions of law.

---

[3] *See, e.g.*, *Hilton v. State*, 422 S.C. 204, 208, 810 S.E.2d 852, 854 (2018) (noting the *Prince* and *Faretta* framework apply in a PCR setting where the applicant sought to waive his statutory right to counsel).

**JAMES, J., concurs.**